IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>FIRST STATE DEPOSITORY COMPANY, LLC, ARGENT ASSET GROUP LLC, AND ROBERT LEROY HIGGINS,<br><br>Defendants. | Case No. 22-cv-01266-RGA |

## RECEIVER'S FIRST FEE APPLICATION

Pursuant to the *Order Granting Plaintiff's Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief* ("SRO") entered by the Court on September 29, 2022 [Docket No. 12], the Receiver is required to submit periodic requests for authorization to pay fees and expenses of the receivership, with the first request due within 14 days after issuance of the SRO. *See* SRO, *¶36.* The Receiver provided the Plaintiff Commodity Futures Trading Commission (the "CFTC") and counsel for the Defendants with a complete copy of the proposed Application, together with all exhibits and relevant billing information. The CFTC is unopposed to the relief requested herein. The Defendants did not take any position with respect the relief requested herein.

The Receiver's First Fee Application covers the period from the inception of the receivership on September 29, 2022 through Sunday, October 9, 2022.

I.      **FEES AND EXPENSES INCURRED**

    A.      **Receiver Fees.**

**Fees.**  By this Application, the Receiver requests authority to pay $17,597 in Receiver fees, which is 90% of the total Receiver fees of $19,553 incurred from September 29, 2022, through October 9, 2022.  During this period, the Receiver provided 49.50 hours of service at his discounted hourly rate of $395.00[1].  In addition to reducing his standard hourly billing rate, the Receiver also discounted his total fees by 10%.  The valuable services provided by the Receiver during this time period are set forth in the invoice marked **Exhibit A** attached hereto.  The services included assembling a team to seize and take control of the Defendant's primary office location; having the locks to the secure location changed; having the alarm system and video monitoring of the location changed; having notices of the receivership filed in other jurisdictions in which there may be assets pursuant to 28 U.S C. Section 754; retaining an accounting firm to prepare an audit of the precious metals at the Defendant's depository location and comparing the precious metals on site to the precious metals represented to Defendants' customers as being held by the Defendants; contacting banks of the Defendants; communicating with Defendants' counsel; having insurance policies modified to include the Receiver as an additional insured; speaking with customers of the Defendants concerned about their metals; retaining local counsel to represent the Receiver; and investigating the assets and business of the Defendants.

Pursuant to the SRO, the Receiver seeks authority to pay a total of **$17,597** in Receiver fees incurred from September 29, 2022, through October 9, 2022.

---

[1] Mr. Crawford's regular billing rate for non-receivership matters is $495 per hour.

{01846417;v1 }                                    2

**B.     Receiver's Primary Counsel Fees and Expenses.**

**Fees.**  The law firm of Scheef & Stone, L.L.P. ("Scheef & Stone") serves as primary counsel for the Receiver[2]. Scheef & Stone submits monthly invoices to the Receiver for the services rendered. By this Application, the Receiver requests authority to pay Scheef & Stone $57,703 in fees for the work performed from September 29, 2022, through October 9, 2022. Scheef & Stone's invoice for the period from September 29, 2022, through October 9, 2022 is marked as **Exhibit B** attached hereto.

The attorneys and paralegals of Scheef & Stone who provided services to the Receiver during this period, their billable rates, and the hours billed are summarized as follows:

| Attorney/Paralegal | Hours Billed | Billable Rate | Total Billed |
|---|---|---|---|
| Peter Lewis (Partner) | 39.60 | $450 | $17,820 |
| David Wills (Associate) | 6.40 | $300 | $1,920 |
| Cynthia Morris (Paralegal) | 4.90 | $125 | $612 |
| Deb Baxter (Paralegal) | 52.70 | $150 | $7,905 |
| Victoria LaFleur (Law Clerk) | 38.50 | $200 | $7,700 |
| Raymond Lee (Associate) | 40.70 | $250 | $10,175 |
| Julia D. Daneshfar (Associate) | 38.35 | $300 | $11,505 |
| Leslie Sanderson (Associate) | 0.20 | $330 | $66 |
| **Totals:** | 221.35 | **$261 (discounted blended rate)** | **$57,703** |

---

[2] Mr. Crawford is a partner in Scheef & Stone.

Scheef & Stone provided valuable services to the Receiver during the period of September 29, 2022 through October 9, 2022. A description of these services is set forth in the invoice attached hereto as **Exhibit B**. The services included assisting the Receiver in seizing and taking control of the Defendants' business location; having the locks changed; obtaining 24 hour armed guard security for the location; beginning the audit of precious metals held by the Defendants and identifying the inventory of precious metals that are supposed to be held by Defendants as represented to their customers; having notice of the appointment of the Receiver filed in various district courts throughout the country pursuant to 28 U.S.C. Section 754; sending the SRO to banks and third parties to freeze assets; and assisting the Receiver in retaining local counsel and working with the accounting firm retained by the Receiver to perform an audit of the metals on site at the Defendants' facility.

**Expenses.** In addition, to assist the receivership estate, Scheef & Stone incurred expenses in the amount of $32,142.10 between September 29, 2022, and October 9, 2022. The expenses are set forth in detail on **Exhibit C** attached hereto. The most significant expenses are for 24 hour armed guard security at the Defendants' facility ($11,220) and changing the locks and access to the facility ($4,761).

In sum, pursuant to the SRO, the Receiver seeks authority to pay Scheef & Stone a total of **$88,845** in fees and expenses.

    C.    **Receiver's Local Counsel Fees.**

The law firm of Ashby & Geddes in Wilmington, Delaware serves as local counsel for the Receiver. By this Application, the Receiver requests authority to pay Ashby & Geddes $2,320 in fees for the work performed from September 29, 2022, through October 9, 2022. Ashby & Geddes invoice for the period from September 29, 2022, through October 9, 2022 is attached hereto as

**Exhibit D**. Ashby & Geddes performed valuable services to the Receiver by making an appearance in the lawsuit, seeking pro hac vice admission of the Receiver's primary counsel before the Receivership Court, and advising the Receiver and his primary counsel of the local rules for practice before the Receivership Court.

Pursuant to the SRO, the Receiver seeks authority to pay Ashby & Geddes a total of **$2,320**.

D. **Receiver's Accounting Firm's Fees.**

The national accounting firm Baker Tilly US, LLP ("Baker Tilly") serves as the Receiver's accountants. By this Application, the Receiver requests authority to pay Baker Tilly $19,548 in fees for the work performed from October 7, 2022 through October 9, 2022. Baker Tilly's invoice for the period from October 7, 2022 through October 9, 2022 is attached hereto as **Exhibit E**. Baker & Tilly performed valuable services to the Receiver by beginning, on an expedited basis, an audit of the precious metals on site at the Defendants' depository building and comparing the metals on site with the inventory of metals provided to customers of the Defendants.

Pursuant to the SRO, the Receiver seeks authority to pay Baker Tilly a total of **$19,548** in fees[3].

E. **Third Party Vendor**

The Receiver retained Michael L. Brachman, Ph.D. to assist the Receiver in downloading and using the software program developed by Dr. Brachman for use by the Defendants in preparing an inventory of the precious metals received by the Defendants from its customers. By this Application, the Receiver requests authority to pay Vega Applications Development, Inc. (Dr. Brachman's company) $2,450 for the work performed from September 29, 2022 through October

---

[3] The expenses incurred by Baker Tilly have not yet been billed to the Receiver and will be submitted in a subsequent fee application for the Court to consider.

7, 2022. Specifically, Dr. Brachman provided 9.8 hours of service at $250 per hour. Vega Applications Development, Inc. invoice is attached hereto as **Exhibit F.**

Pursuant to the SRO, the Receiver seeks authority to pay Vega Applications Development, Inc. a total of **$2,450**.

## II. LEGAL DISCUSSION OF GUIDELINES FOR PAYMENT OF RECEIVERSHIP FEES AND EXPENSES

In reviewing the total discounted fees of the Receiver, the Receiver's counsel, and the Receiver's accountants, divided by the hours worked, the lodestar average rate per hour is **$275**. In accordance with the law governing calculation of the lodestar rate, the lodestar rate for which approval is sought in this case is reasonable and does not merit any adjustment.

The "lodestar" method of evaluating the reasonableness of fees, which has been expressly approved by the Supreme Court, requires the court to look into the prevailing market rates in the relevant community and compare the prevalent rates with the average rate charged in the matter in issue. *Perdue v. Kenny*, 130 S.Ct. 1662, 1673 (2010). The Supreme Court held that the lodestar figure enjoys a "strong presumption" but is not always conclusive. *Id*. The Court calculates the lodestar by "multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019).

The hours to be used in calculating the attorneys' fees must be detailed with sufficient specificity for the court to determine whether the hours claimed are reasonable for the work performed. *Keenan v. City of Philadelphia*, 983 F.2d 459, 472–73 (3d Cir. 1992). The "preferred practice" is to submit contemporaneously recorded time sheets, and the requisite specificity is met where a computed-generated timesheet provides the date the activity took place. *Id.*; *see also, e.g.,*

*William McMichael v. U.S. Department of Justice,* No. CV 18-997-CJB, 2022 WL 4597885, at *9 (D. Del. Sept. 30, 2022). "Fees and costs should not be awarded for excessive, redundant or otherwise unnecessary work." *Id.* However, time spent on matters "inextricably linked" to the case may be included in the calculation. *Keenan*, 983 F.2d 459, 474.

Generally, a reasonable hourly fee for each attorney is determined by the "prevailing market rate in the relevant community, taking into account the attorney's skill and experience." *William Mcmichael*, 2022 WL 4597885, at *9. An attorney's billing rate is reasonable if it is the attorney's market rate of compensation. *Keenan*, 983 F.2d 459, 475. "The value of an attorney's time generally is reflected in his normal billing rate." *Id.*

"After calculating the lodestar, the court may deviate from it, but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.' " *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017) (quoting *Perdue*, 130 S.Ct. 1662, 1673). Thus, consideration of the *Johnson*[4] factors is "permissible on the back end of a lodestar's calculation," but only "as long as they are not already 'subsumed in the lodestar calculation.' " *Souryavong*, 872 F.3d 122, 128 (citing *Perdue*, 130 S.Ct. 1662, 1673). The amount of the award, and any reduction of the requested fee award, is within the trial court's discretion. *See, e.g., United States Football league v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989).

Additional considerations are also relevant in the context of an equity receivership. First, the agreement or opposition of the CFTC to the fee application is entitled to great weight. *See, e.g., SEC v. Fifth Ave. Coach Lines, Inc.,* 364 F.Supp. 1220, 1222 (S.D.N.Y. 1973). Further, given

---

[4] *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974); *see also MP by & through VC v. Parkland Sch. Dist.*, No. 5:20-CV-04447, 2021 WL 5177012, at *3 (E.D. Pa. Nov. 5, 2021).

the public service nature of equity receiverships, courts also consider the amounts recovered or other results obtained by the receiver in determining what constitutes a "reasonable fee." *SEC v. Goren,* 272 F.Supp.2d 202, 207 (E.D.N.Y. 2003). Additionally, examination of reasonableness and necessity should consider all circumstances surrounding the receivership. *See, SEC v. W.L. Moody & Co., Bankers (Unincorporated),* 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd, SEC v. W.L. Moody & Co.,* 519 F.2d 1087 (5th Cir. 1975). The complexity and difficulty associated with the receivership are highly relevant factors in determining the reasonableness of professional fees. *See, SEC v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) (awarding interim fees and expenses to law firm for role in receivership and noting that it involved wide variety of complex legal matters requiring the time, competence, and diverse resources of a law firm of high caliber). Further, Courts examine the credentials, experience, reputation, and other professional qualities required to carry out a court's orders when assessing the reasonableness of the rates charged for services to a receivership. *See, W.L. Moody & Co.,* 374 F. Supp. at 481 (holding that a court should give "considerable weight" to "a receiver's abilities, as required by the tasks of the receivership"); *see also, Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. at 1222 (fees awarded in full because they were based on law firm's usual hourly rate and supported by meticulous records).

      The Receiver submitted detailed descriptions of the matters on which services were expended, the number of hours billed by each professional, the rates charged by each, and the lodestar calculation for the fees submitted in this Application. Further, the Receiver's invoices and this motion demonstrate that billing judgment was exercised in the reduction of the standard rate charged by the Receiver[5], and in discounting the total invoice of the Receiver. Finally, the

---

[5] The Receiver's standard hourly rate is $450, but it is discounted for receivership work to $395.

Receiver requests that the Court judicially notice the much higher hourly rates approved in other receiverships,[6] including those in the Third Circuit[7] and in the Receiver's primary market[8].

The request for approval of the disbursements is also consistent with the *Johnson* factors which are, in this case, subsumed in the lodestar calculation. Based on the lodestar calculation and the *Johnson* factors discussed above, the Receiver believes that the fees submitted are appropriate, just, and reasonable.

**A.    The Time and Labor Required.**  The Receiver respectfully directs the Court's attention to the foregoing summary schedule of unpaid fees and expenses, which identifies the total number of hours billed by the Receiver and the Receiver's attorneys (271 hours) from

---

[6] *See, e.g., SEC v. Amerindo Investment Advisors Inc.*, Case No. 1:05-cv-05231-RJS, (S.D.N.Y. 2019) ("the overall blended hourly rate of $270 between the years of 2013 and 2018 is reasonable" Opinion & Order [Doc. 722]);
*SEC v. Colonial Tidewater Realty Income Partners, LLC.*, Case No. 1:15-cv-02401-ELH, (D. Md. 2018) (approving Receiver's hourly rate of $425 per hour in 2018 [Doc. 144 and 150]).

[7] Federal equity receiverships are relatively rare in the Third Circuit, and the court-approved fees in such cases are often under seal. *See, e.g.,* <u>SEC v. Bentley</u>, No. CV 01-5366, 2018 WL 7813740 (E.D. Pa. Dec. 14, 2018) (Receiver's Report and Application for Approval of Fees [Doc. 384], filed under seal; Order Granting the Receiver's Fee Application [Doc. 392]). However, at least one district court in the Third Circuit has approved the 2009 hourly rate for a federal equity receiver at $400 an hour and approved the request that the receiver's legal counsel be paid at their 2009 rate of $425 an hour. *See* <u>S.E.C. v. Forte</u>, No. 2:09-cv-00064, 2012 WL 1719145 (E.D. Pa. May 16, 2012) (Receiver's Motion for Approval of Fees [Doc. 232]; Order Granting the Receiver's Fee Application [Doc. 236]). The market rate for both Receivers and their legal counsel has increased significantly since 2009, justifying a significantly higher rate in this case.

[8] *See, for example, Securities and Exchange Commission v. Correll;* Case No. 4:05-CV-472, in the United States District Court for the Eastern District of Texas, Sherman Division (approving Receiver fees of $400 per hour and lead counsel fees of $585 per hour); *SEC v. Amerifirst Funding, Inc., et al.,* Cause No. 3:07-CV-01188, Docket No. 117, in the United States District Court for the Northern District of Texas; Receiver's counsel's rates, discounted by 10–20% is $420 per hour; *SEC v. W Financial Group, LLC, et al.,* Cause No. 3:08-CV-0499-N, Docket No. 65, in the United States District Court for the Northern District of Texas; Receiver's counsel's rate is $510 per hour, and $165 per hour for a law clerk; *CFTC v. Pousa;* Case No. 1:12-cv-00862 in the United States District Court for the Western District of Texas, Austin Division (approving Receiver fees in excess of $600 per hour); and *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.;* Case No. 3:09-CV-0298-N, in the United States District Court for the Northern District of Texas, Dallas Division (approving Receiver's lead counsel fees of $420 to more than $900 per hour).

September 29, 2022 through October 9, 2022.  The initial days of a receivership are extremely time intensive and require a lot of hands on-deck to leverage obtaining information about assets and seizing assets with the element of surprise and before the assets disappear.  In addition, there is an enormous learning curve in obtaining information about the business, the employees of the business, the investors or clients of the Defendants, the nature of the business, and the individual Defendants.  *Declaration of Receiver Kelly M. Crawford* ("Receiver's Declaration"), *¶4,* attached hereto as **Exhibit G.**

   **B.** **The Novelty and Difficulty of the Questions.** Federal equity receiverships require extensive experience in order to act swiftly and efficiently in securing assets, obtaining documents and data to find additional assets, and to communicate with investors and law enforcement agencies.  As set forth in the detailed invoices attached hereto the Receiver and his personnel, accomplished a great deal in the first days of the receivership including, but not limited to, executing upon the SRO, seizing assets, taking control of the Defendants' facility that stores precious metals; securing the facility; and beginning the inventory of such precious metals at the facility.  Receiver's Declaration, ¶5.

   **C.** **The Skill Requisite to Perform the Service.** The Receiver believes the services performed in this case to date required individuals possessing considerable experience in the administration of receiverships, claims processes, distribution plans, asset seizure, collection and litigation.  The Receiver and Scheef & Stone, L.L.P., for which disbursement approval is sought, have considerable experience in such areas.

   **D.** **The Preclusion of Other Employment Due to Acceptance of the Case.** Neither the Receiver nor Scheef & Stone, LLP declined any representation solely because of their services

in this case, although the scope of the receivership is so broad that it requires substantially most of the Receiver's time.

   **E.** **The Customary Fee.** The hourly rates sought herein for the Receiver and the Receiver's attorneys are *substantially* lower than the rates charged by other practitioners of similar experience levels in Delaware or the surrounding area, and in Texas where the Receiver has his office. Indeed, the per hour rates charged by the Receiver's counsel whose fees are included herein (ranging between $200 – $475 charged for attorneys) are $100 to $200 per hour lower than the rates charged on other receiverships pending in Texas.[9] The lodestar rate of $275 per hour also demonstrates that when appropriate the Receiver is having work performed by less expensive attorneys or legal assistants. Moreover, the Receiver exercised his billing judgment by discounting his own fees by 10%, writing off time of his attorneys, and not billing for any travel time of himself, his attorneys or his accountants. Receiver's Declaration, ¶2. Finally, the Receiver did not bill for any of his time or expense incurred prior to his appointment as Receiver in preparing for the possibility of being appointed as Receiver. *Id. at ¶¶ 2, 3.*

   **F.** **Whether the Fee is Fixed or Contingent.** The Receiver's fees and his counsel's fees are fixed insofar as monies exist by way of Receivership Assets from which to pay such fees, but payment of the fees and expenses is subject to approval by the Court.

   **G.** **Time Limitations Imposed by the Client or Other Circumstances.** There were significant time limitations imposed for this period because of the need for the Receiver to immediately seize assets, secure the location of the Defendants' operations, and secure the precious metals and other assets held by the Defendants.

---

[9] *See footnote 8, supra.*

**H.     The Amount Involved and the Results Obtained**.  The fees for which payment is sought were for work summarized previously.  The Receiver's attorneys and accountants contributed significantly to the Receiver's seizure of assets, including precious metals that likely exceed $75 million.

**I.     The Experience, Reputation and Ability of the Attorneys.**  Scheef & Stone, the Receiver's primary counsel, include numerous attorneys who have experience in representing equity receivers in federal securities or commodities enforcement cases, and have done so for numerous years.  The reputation of Scheef & Stone is recognized and respected in these fields.  Mr. Crawford has served as a receiver in more than 12 federal court cases brought by either the CFTC or the Securities and Exchange Commission, with Scheef & Stone as Mr. Crawford's counsel.

**J.     The Undesirability of the Case.**  The representation of the Receiver incident to this case has not been undesirable.

**K.     The Nature and Length of the Professional Relationship with the Client.**  Scheef & Stone has represented the Receiver in numerous prior receiverships.

**L.     Awards in Similar Cases.**  The Receiver believes the fees requested in this case for his counsel are less than or equal to those which have been awarded in similar cases in federal courts.

## CONCLUSION

In conclusion, in accordance with the SRO, the Receiver represents that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate, and the Receiver requests authority for payment of such fees and expense.

Respectfully submitted on October 13, 2022.

        **ASHBY & GEDDES, P.A.**

        */s/ Ricardo Palacio*
        Ricardo Palacio, Esq. (DE Bar No. 3765)
        500 Delaware Avenue, 8th Floor
        P.O. Box 1150
        Wilmington, Delaware 19899-1150
        Tel: (302) 654-1888
        Fax: (302) 654-2067
        Email: rpalacio@ashbygeddes.com

        -and-

        **SCHEEF & STONE, L.L.P.**
        Peter C. Lewis, Esq. (admitted *pro hac vice*)
        500 North Akard, Suite 2700
        Dallas, Texas 75201
        Telephone: (214) 706-4200
        Facsimile: (214) 706-4242
        Email: Peter.Lewis@solidcounsel.com

        *Counsel to Kelly Crawford, Receiver*