IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST STATE DEPOSITORY COMPANY, LLC, ARGENT ASSET GROUP, LLC, AND ROBERT LEROY HIGGINS,<br><br>    Defendants. | CASE NO.: 1:22-cv-01266-RGA |

## THE RECEIVER'S INITIAL REPORT

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits the following initial report pursuant to this Court's *Order Granting Plaintiff's Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief* [D.I. 12] (the "SRO").[1]

## INTRODUCTION

Pursuant to the SRO, and in light of the pendency of the preliminary injunction hearing, the Receiver's priorities in the first sixty days of the receivership were to take control of the Defendants' operations, determine the assets owned, controlled, or held in custody by the Defendants, and protect the security of such assets. This report summarizes the steps taken by the Receiver to date to accomplish these tasks.

---

[1] The SRO was continued in force by an *Order Extending Statutory Restraining Order and Adjourning Preliminary Injunction Hearing* (the "Extension Order") entered by the Court on October 7, 2022 [D.I. 19]. The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

## **THE FIRST 48 HOURS**

The SRO was entered under seal on the afternoon of September 29, 2022.  Shortly thereafter, the Receiver and the Plaintiff Commodity Futures Trading Commission ("CFTC") made arrangements with the U.S. Marshals to provide law enforcement assistance to the Receiver in gaining access to the principal business location of the Defendants at 100 Todds Lane in Wilmington, Delaware. The Receiver and his team, consisting of four attorneys and one paralegal, travelled from Dallas, Texas to Wilmington, Delaware on October 3, 2022, and prepared for the seizure of assets the following day.

On the morning of October 4, 2022, the Receiver and his team joined four representatives of the CFTC, and law enforcement to take control of the Defendants' principal business location.

A.   **The Business Premises**

The building at 100 Todds Lane in Wilmington, Delaware houses two businesses.  The business run by Defendant First State Depository Company, LLC ("FSD") is a depository for precious metals and valuables.  FSC charges its customers a fee for housing the metals or valuables in the building.  Defendant Argent Asset Group, LLC ("Argent") buys and sells precious metals and collector items.

The building in which FSD and Argent operates is surrounded by a gated fence and includes a sophisticated alarm system with motion detectors and video monitoring.

 The precious metals and valuables stored by FSD are housed in a vault room of the building that includes within it a separate smaller room with a large combination vault door.  The most valuable metals are held within this smaller vault room.  The customer holdings are generally in small to medium boxes on shelves, or on pallets, and are identified by an account number.

The metals and collector items owned by Argent are in a separate area of the building, outside of the vault room. An interior door of the business premises with an Argent sign leads to the rooms that house the Argent assets.

In addition, the building includes a room for preparing valuables to be shipped or unpacked. There is also a large room for receiving deliveries. The building includes offices for the employees and files, a conference room, a reception area, and a kitchen/breakroom with bathrooms.

### B.     Gaining Entry to the Business Premises

On the morning of October 4, 2022, the Receiver provided Danielle Leins, an employee of the Defendants, with a copy of the SRO as she pulled into the parking lot of the business premises.  She immediately called David Wicks, counsel for the Defendants. The Receiver provided Mr. Wicks with a copy of the SRO and, after reviewing the SRO, Mr. Wicks indicated he would instruct Ms. Leins to cooperate with the Receiver. Ms. Leins opened the premises to the Receiver and his team and turned over her keys to the Receiver. The Receiver's team was accompanied by the CFTC team and the U.S. Marshals.

### C.     Securing the Business Premises

In order to secure the business premises, the Receiver hired a locksmith to change the numerous locks on the exterior and interior of the premises and change the combination to the vault door. In addition, the Receiver informed the alarm company of the receivership. The alarm company made several service calls to the business premises to get the alarm system changed so that it is now under the control of the Receiver. Finally, because millions of dollars of precious metals and valuables are housed in the building, the Receiver retained Pinkerton to provide 24 hour armed security on the site of the business premises.

### D. Initial Inventory of the Business Premises

Upon entry to the business premises, the Receiver and his staff made a video inventory of the contents of the building. In addition, the CFTC had one of its IT specialists make a copy of the hard drives of the numerous computers in the premises. The Receiver contacted the consultant used by the Defendant FSD to maintain the inventory reports of metals and goods on deposit with FSD. The consultant assisted the Receiver and his team with the software required to identify the customers, and holdings each customer is supposed to have on deposit with Defendant FSD as of October 4, 2022. Indeed, it is the software the Defendant FSD uses to generate invoices to its customers that list the holdings that are supposed to be held by Defendant FSD. In addition, the Receiver contacted the general counsel of New Direction, which administers IRAs for several hundred customers with metals on deposit with Defendant FSD. The general counsel of New Direction provided the Receiver with a list of its customers and the holdings each IRA customer is supposed to have at the Defendant FSD business premises. The Receiver had his team compare that list with the actual holdings in the small vault room, and note any discrepancies.

### E. Notifying Third Parties of the Receivership

While the Receiver's team was at the business premises in Wilmington, Delaware, the Receiver had an attorney in his office in Dallas, Texas fax and email letters to any financial institution or other entity that may be holding assets subject to the receivership. Indeed, as the Receiver and his team obtained information regarding a potential holder of Defendants' assets, the attorney in Dallas prepared and sent out a letter with a copy of the SRO to the entity believed to be holding assets.

## ESTABLISHING JURSIDICTION FOR THE RECIEVERSHIP

Pursuant to 28 U.S.C. Section 754, a Receiver may be vested with complete jurisdiction and control of all property within the territory of a federal district court if the Receiver, within ten (10) days of his appointment, files with the federal district court a copy of the complaint and the order appointing him Receiver. Based on information regarding the scope of the Defendants' business dealings, the Receiver filed a copy of the complaint and the order appointing him Receiver in the district courts of Delaware, Philadelphia, New York, Connecticut, Illinois, Kansas, Virginia, West Virginia, Florida, Ohio, Texas, California, and Hawaii. These filings establish jurisdiction for the receivership in those States and allow the Receiver to recover assets of the Defendants that may be found in those States.

## IDENTIFYING THE ASSETS OF DEFENDANT FSD

The Receiver retained the highly respected national accounting firm Baker Tilly to conduct a physical count and audit of the assets held by Defendant FSD. For the past five weeks, groups of accountants with Baker Tilly have been at the business premises identifying and counting the precious metals, bullion, currency, or other valuable items that are stored in the vault room of the business premises and assigned to a specific FSD customer. The accountants are comparing the actual physical count to the inventory that is supposed to be at the business premises based upon the inventory reports provided by Defendant FSD to its customers. At the Receiver's request, the Baker Tilly accountants are putting together a report of their findings, which should be available shortly. This report will be used to identify the specific assets missing from the inventory Defendant FSD provided its customers.

## IDENTIFYING THE ASSETS OF DEFENDANT ARGENT

The Receiver also retained the Baker Tilly accounting firm to make a physical count and prepare an inventory of the metals, collectables, and other valuables held by Defendant Argent. At the Receiver's request, the Baker Tilly accountants are putting together a report of their findings, which should be available shortly. This inventory will be used to identify the assets that may be available for liquidation and distribution to customers of Defendant FSD who have metals or valuables missing.

## IDENTIFYING THE ASSETS OF DEFENDANT ROBERT HIGGINS

Prior to the receivership, Defendant Higgins filed bankruptcy and listed his assets[2]. The assets listed indicate there is equity in a large house he owns in West Chester, Pennsylvania. The Receiver made numerous demands upon Defendant Higgins to allow the Receiver to inspect the house and its contents. After much delay, Defendant Higgins made his home available for inspection by the Receiver, his attorney, and paralegal, on November 3, 2022. The Receiver and his team prepared a video inventory of the contents of the home.

In addition, the Receiver discovered that Defendant Higgins was in possession of a laptop computer and a 2003 Hummer[3] that he failed to turn over to the Receiver. After demand, Defendant Higgins turned over possession of the Hummer and the lap top computer to the Receiver. The Receiver had the laptop copied and returned the computer to Defendant Higgins

---

[2] The bankruptcy court did not agree to extend the automatic stay, so this lawsuit is not barred by the bankruptcy.

[3] The 2003 Hummer is owned by Defendant Argent.

## ATTEMPTS BY THE RECEIVER TO IDENTIFY ADDITIONAL ASSETS

The Receiver noticed the asset depositions of each of the Defendants so that the Receiver could obtain critical information to assist him in identifying additional assets. Counsel for Defendant Higgins indicated Higgins would invoke the Fifth Amendment in response to any question asked by the Receiver regarding assets. In addition, counsel for Defendant FSD and Argent indicated they intended to withdraw as counsel for those entities and had no means to facilitate the entities designating a corporate representative to testify regarding assets. This refusal by the Defendants to provide information to the Receiver regarding assets is hurting the receivership. Nevertheless, the Receiver is continuing to obtain information, including bank records, which is providing leads for the Receiver to pursue in recovering additional assets.

## OTHER ACTIVITIES OF THE RECEIVER

### A.   Communications With Worried FSD Customers

As can be understood, there are hundreds of customers very worried about whether their metals, currency, or other valuable goods are, in fact, at the business premises of Defendant FSD as they are supposed to be and as shown on the statements received from FSD. In order to advise the customers of the receivership, the Receiver established a website, www.fsdreceivership.com, where the Receiver provides his contact information, answers to frequently asked questions, a timeline of events, and copies of the Complaint, and the orders of the Court. In addition, the Receiver gained control of the domain names for www.fsd.com so that it is now redirected to the Receiver's website.

The Receiver also has a paralegal dedicated to recovering and maintaining information from each customer to facilitate communications with the customer during the receivership. The Receiver has had a number of calls with anxious customers about the receivership.

### B. Stay of Pending Litigation

The SRO includes a stay of any litigation against the Defendants. The Receiver learned the Defendants Argent and Higgins were being sued in the Circuit Court of the Eleventh Circuit for Miami-Dade County, Florida in Case Number: 2019-015142-CA-01, *Feldcom Corp., et cet., v. Isaak Akouka, et al.* The Receiver informed Defendants' counsel in that lawsuit of the SRO and a notice of stay was filed in the Florida lawsuit.

### C. Insurance

The Receiver learned that the insurance policy that insures the metals and valuables held by the Defendants, as well as the property and commercial liability insurance policies, were near cancellation for nonpayment of premiums. The Receiver immediately paid the past due premiums to insure that the insurance was not cancelled.

### D. Social Security Benefits

Pursuant to the Extension Order, any social security benefits of Defendant Higgins that are frozen and turned over to the Receiver are to be turned over by the Receiver to Defendant Higgins and placed in a new bank account in which the Receiver is a co-signer with Higgins. Higgins' social security benefits for October were frozen and turned over by Chase Bank to the Receiver. The Receiver issued a check payable to Higgins for the amount of the benefits and met Higgins at PNC Bank in West Chester, Pennsylvania to open up a joint account to receive the benefits. The account was opened, but the Receiver was recently informed by counsel for Higgins that PNC Bank closed the account.

### E.      Landlord Issues

The Defendants do not own the building premises.  The premises are leased.  The landlord claims the Defendants owed past due rent and other expense prior to the receivership and that the Defendants are in default of the lease for not paying the monies owed under the lease.  The Receiver informed the landlord's attorneys of the stay in the SRO and indicated that if the preliminary injunction is granted and the receivership continues, there will be a process for creditors to file claims against the receivership estate, much like a bankruptcy.

### F.      Mail

The Receiver executed change of address forms so that the Receiver is now receiving mail directed to the Defendants at their building premises.

## ASSETS RECOVERED TO DATE

The assets recovered to date by the Receiver are as follows:

| | |
|---|---|
| Chase Bank: | $71,186.85[4] |
| Cash[5] found in the premises | $11,874.37 |
| Check to Argent | $13,500.00 |
| 2003 Hummer | Unknown value – not yet appraised |
| Precious metals, collector items, currency, etc. owned by Argent[6] | Unknown value – not yet appraised |
| Office furnishings[7] | Unknown value – not yet appraised |
| Forklifts | Unknown value – not yet appraised |

The Receiver has leads on other assets that have not yet been turned over to the Receiver.

---

[4] The Receiver opened a receivership bank account in which to deposit monies and assets received.
[5] This is standard U.S. currency, and not collector items.
[6] These assets will be identified in the report being prepared by the Baker Tilly accounting firm.
[7] Includes numerous desks, computers, tables, and office supplies.

## **RECEIVERSHIP PROCEEDINGS IN THE LAWSUIT**

To date, the Receiver submitted to the Court in the underlying lawsuit the following:

As required by the SRO, on October 13, 2022, the Receiver filed his First Fee Application [D.I. 24] that was unopposed by the CFTC, and which has not been responded to by the Defendants. The Fee Application is pending before the Court.

On November 9, 2022, the Receiver filed his Motion for Order Compelling Turnover of Retainer Funds [D.I. 34]. The Defendants responded and at the Court's hearing on November 29, 2022, the Court requested the Receiver and Defendants to submit an order allowing the Defendants' counsel to use the retainer for the criminal defense of Mr. Higgins.

On November 11, 2022, the Receiver filed his Emergency Motion to sell Certain Assets [D.I. 36]. The Court entered an Order on November 17, 2022 granting the Motion and requiring the Receiver to submit a report regarding the sale to the Court.

[*Signature Page to Follow*]

Respectfully submitted on November 29, 2022

        **ASHBY & GEDDES, P.A.**

        */s/ Ricardo Palacio*
        Ricardo Palacio (DE Bar No. 3765)
        500 Delaware Avenue, 8th Floor
        P.O. Box 1150
        Wilmington, DE 19899-1150
        Tel: (302) 654-1888
        Fax: (302) 654-1888
        Email: RPalacio@ashbygeddes.com

        -and-

        **SCHEEF & STONE, L.L.P.**
        Peter C. Lewis, Esq. (admitted pro hac vice)
        500 North Akard Street, Suite 2700
        Dallas, TX 75201
        Tel: (214) 706-4200
        Fax: (214) 706-4242
        Email: Peter.Lewis@solidcounsel.com

        *Counsel to Kelly Crawford, Receiver*