IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br>             Plaintiff,<br><br>v.<br><br>FIRST STATE DEPOSITORY COMPANY, LLC, ARGENT ASSET GROUP, LLC, AND ROBERT LEROY HIGGINS,<br>             Defendants. | CASE NO.: 1:22-cv-01266-RGA |

## THE RECEIVER'S SECOND STATUS REPORT

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits the following Second Status Report pursuant to this Court's *Order Granting Plaintiff's Motion for an Ex Parte Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief* [D.I. 12] (the "SRO").[1]  The Receiver's Initial Status Report was filed on November 29, 2022 [D.I. 44], and this Second Status Report covers the two month period from November 30, 2022 through January 31, 2023.

## INVENTORY OF ASSETS

With more than 2,000 customers of Defendant First State Depository Company, LLC ("FSD") anxiously awaiting word as to whether their holdings were found at the FSD office, the

---

[1] The SRO was continued in force by an *Order Extending Statutory Restraining Order and Adjourning Preliminary Injunction Hearing* (the "Extension Order") entered by the Court on October 7, 2022 [D.I. 19].  The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

Receiver focused earnestly on working with the Baker Tilley accounting firm (the "<u>Accountants</u>") he retained to complete the inventory of assets in the possession of FSD.

The Accountants physically counted and inventoried approximately 1.58 million items. At the Preliminary Injunction hearing on December 2, 2022, the Receiver testified to the Accountants' initial assessment that nearly half of the FSD customers had inventory missing from what they put on deposit with FSD. On December 31, 2022, the Accountants prepared their initial report and on January 9, 2023, it was filed with the Court [D.I. 78-1] and posted on the receivership website. Thereafter, the Accountants obtained additional information that caused some slight modifications in their findings and on January 20, 2023 the Accountants issued a supplement to their initial report. This Supplemental Report was filed with the Court on January 23, 2023 [D.I. 82] and posted on the receivership website. The value of the assets missing from the FSD customers is significant, ranging from $58.9 million to $112.7 million.

## COMMUNICATIONS WITH CUSTOMERS

The Receiver's paralegal spends nearly all day, each day of the week, talking with distressed FSD customers regarding the receivership, the Accountants' report, and the projected timing for the return of their metals or other assets. The Receiver's paralegal has compiled a database of more than 550 depositors she has communicated with to date. The Receiver continues to post relevant information on the receivership website for the depositors to obtain information.

## CLAIMS AND DISTRIBUTION PROCEDURES

On January 23, 2023, the Receiver filed his Motion to Establish Claims and Distribution Procedures [D.I. 83] setting forth the Receiver's proposal for returning the assets to the FSD customers and establishing a claims process for those customers who have assets missing. Although the Receiver would ordinarily propose liquidating all assets and making a *pro rata* distribution to all customers, in this instance the Receiver determined the assets in the FSD vault that have not been commingled with assets of the Defendants belong to the FSD customer and are not part of the receivership estate. Accordingly, the Receiver proposes returning the assets to each FSD customer and liquidating the assets of Defendants Argent Asset Group, LLC ("Argent") and Robert Leroy Higgins ("Higgins") to make restitution to those FSD customers who have assets missing. The CFTC is opposed to the Receiver's proposal and contends all assets should be liquidated and used to make a *pro rata* distribution to all FSD customers.

## SECURING THE ASSETS

Securing the assets at the Defendants' offices at 100 Todds Lane, Wilmington, Delaware, remains the Receiver's top priority. At great expense to the receivership estate, the Receiver continues to have a Pinkerton armed guard on site 24 hours a day, every day. For this reason, the Receiver is eager to obtain and implement procedures from the Court for the distribution of the assets to the FSD customers, or sale of the assets, as the Court will determine. Because the Receiver initially recovered less than $100,000 from the Defendants, on November 11, 2022, the Receiver requested the Court, on an emergency basis, to authorize the Receiver to sell gold, silver, and platinum bullion that was not owned by a FSD customer to raise funds sufficient to pay the security costs. On November 17, 2022, the Court entered an Order authorizing the Receiver to sell up to $125,000 of bullion not owned by the FSD customers [D.I. 40]. On December 15, 2022,

the Receiver sold gold and platinum to Dillon Gage for $59,045.10. On January 11, 2023, the Receiver filed a motion requesting the Court to also authorize the Receiver to sell palladium, rhodium, and convert Iraq Dinar to U.S. currency, provided such assets do not belong to the FSD customers. On January 20, 2023, the Court entered an Order granting the Receiver's request [D.I. 81]. On January 24-27, 2023, the Receiver sold silver, gold, and palladium to Dillon Gage for a net of $65,816.50, raising the total value raised by the Receiver from these assets to $124,861.60. The Receiver will use these monies to pay outstanding invoices due to the Pinkerton company for security.

## **ATTEMPTS BY THE RECEIVER TO IDENTIFY ADDITIONAL ASSETS**

With the Accountants' having identified assets worth between $58.8 million and $102 million missing from the FSD vault, the question everyone is asking is where did those assets go and how can they be recovered? Defendant Higgins is asserting the Fifth Amendment and refuses to give an asset deposition to the Receiver. On January 25, 2023, the Receiver took the depositions of Steven Higgins and Eric Higgins, two of the sons of Robert Higgins who worked with Robert Higgins at 100 Todds Lane, Wilmington, Delaware.

Eric Higgins, a former officer of FSD, testified he regretfully would assert his Fifth Amendment in response to any question asked by the Receiver.

Steven Higgins was in charge of the rare coin and collectible arm of Defendant Argent, and testified for several hours at his deposition. He identified some accounts receivable owing to Argent that the Receiver can seek to recover. He testified he was shocked to read the Accountants' findings and had no idea inventory was being taken from or was missing from FSD. He further testified he does not know the whereabouts of the missing inventory. He confirmed that over the Christmas holiday Robert Higgins, his wife, and daughter travelled to Maui, Hawaii for a vacation.

When Steven Higgins was asked how Robert Higgins could pay for such a vacation considering all of his assets are in receivership, other than his social security benefits, Steven Higgins testified his father told him he used points to finance the vacation.

On January 26, 2023, the Receiver took the deposition of Warith Deen Muhammad, individually, and as the corporate representative of Niagara Gold and Silver. He testified that Robert Higgins was his largest customer and supplier of gold and silver. He further testified that he usually met Higgins at a hotel in Baltimore to either accept delivery of bullion or make delivery of bullion. He testified to a number of instances in which Higgins failed to deliver product to the customers of Niagara Gold and Silver, and that in August, 2022, Higgins tried to drive off with gold Muhammad was delivering in exchange for other bullion. Muhammad testified that neither he nor his company Niagara Gold and Silver were holding any bullion received from the Defendants and they had not sought to sell any bullion for the Defendants since the filing of this lawsuit.

## **LANDLORD ISSUES**

As reported previously, the Defendants do not own the building premises at 100 Todds Lane, Wilmington, Delaware. The premises are leased. The landlord claims the Defendants owed past due rent and other expense prior to the receivership and that the Defendants are in default of the lease for not paying the monies owed under the lease. The Receiver informed the landlord's attorneys of the stay in the SRO and indicated there will be a process for creditors to file claims against the receivership estate.

On December 16, 2022, the Receiver met the landlord at 100 Todds Lane for the landlord to inspect the premises. The landlord noted that most of the heaters were not working and hired

HVAC repairmen to repair the heaters. The Receiver and his staff supervised the HVAC repairmen while the repairs to the heaters were made.

Respectfully submitted on February 1, 2023

**ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899-1150
Tel: (302) 654-1888
Fax: (302) 654-1888
Email: RPalacio@ashbygeddes.com

-and-

**SCHEEF & STONE, L.L.P.**
Peter C. Lewis, Esq. (admitted *pro hac vice*)
500 North Akard Street, Suite 2700
Dallas, TX 75201
Tel: (214) 706-4200
Fax: (214) 706-4242
Email: Peter.Lewis@solidcounsel.com

*Counsel to Kelly Crawford, Receiver*